CASE 18—PETITION EQUITY—APRIL 24.

| 5bu105|
|d105 321|

## Wintersmith vs. Tabor.

APPEAL FROM HARDIN CIRCUIT COURT.

1. *A surety, in a bond having the force and effect of a replevin bond*, executed to the clerk for money in litigation, loaned by order of court, *is released from liability thereon by the failure of the party, to whom the money was adjudged, to issue execution*, or move the court for a rule on the bond for *more than a year* after he was entitled to an execution on the bond. (*Sec. 11, chap. 97, Rev. Stat., 2 Stant.*, 400.) The bond was "*for the benefit of such person or persons as the Hardin circuit court may adjudge.*"

The party to whom the money was adjudged, was bound to take out execution, or move for a rule within a year; and failing to do this, the surety was thereby released, notwithstanding the death of the principal in the bond, within the year.

2. An attorney's fee, plead as a lien and counter-claim, being left *blank in the answer*, and not responded to, the amount of the fee should have been inquired into and deducted, as, by the Code, values are not taken for confessed. It was error in this case not to ascertain and deduct a reasonable attorney's fee.

C. G. WINTERSMITH,          For Appellant,

CITED—

*Revised Statutes, sec. 1, art. 12, chap. 36, 1 Stant.*, 481. 3 *Bush*, 359; *Barbee vs. Pitman.*

M. H. COFER,                                    For Appellee,

CITED—

3 *Bush*, 545; *Rankin vs. White.*

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

A suit was pending in equity, by which the court had under its control funds, the subject-matter of litigation, when, July 3, 1866, J. L. Helm borrowed the money ordered by the court to be loaned, and executed bond, with Wintersmith as his security, payable to the clerk of the court six months thereafter, with interest, for three hundred and seventy-three dollars and forty-five cents, "*for the benefit of such person or persons as the judge of the Hardin circuit court may adjudge, to have the force and effect of a replevin bond.*"

December 27, 1866, this money was adjudged to be Tabor's, and Helm was directed to pay it to him. Helm died in September, 1867, not having paid it.

January 7, 1868, Tabor sued out a rule against Wintersmith, as security, to show cause why he "shall not pay into this court the sum of three hundred and sixty-three dollars and forty-five cents, with interest from July 3, 1866;" to which Wintersmith responded, denying he had executed any such bond as set out in the rule, and prays that the rule be discharged. "But if the court should decide this answer insufficient," he then sets out a bond for three hundred and seventy-three dollars and forty-five cents, with interest, dated July 3, 1866, due in six months, which he did sign as Helm's security; and for defense, says the actions were determined, and the money adjudged to Tabor, and Helm ordered to pay it over to him December 27, 1866; and that Tabor had sued out no execution, nor moved for a rule, for more than a year and a day after said bond became due; and

by reason thereof he was released. He also sets up a counter-claim, due to Helm as Tabor's counsel in said cases, and avers he had a lien on these funds therefor. The amount of this counter-claim is left blank.

The court directed Wintersmith to pay the amount of the bond, and to stand committed, without regard to the discrepancy between the amount set out in the rule and the real amount of the bond, and without regard to the counter-claim, though no response was made to it; and Wintersmith seeks a reversal.

By *section* 1, *article* 5, *chapter* 36, 1 *Stanton's Revised Statutes*, 475, it is provided, that " a final order or decree for money, land, slaves, or other specific things, may be enforced by *any appropriate writ of execution allowable on a judgment at law*, according to the nature of the case."

" 1. Such writs shall issue and be returnable as other writs of execution ; 2. Nothing in this section shall prevent any party from proceeding to carry any order or decree of court into execution, according to the ancient practice of courts of chancery."

By *subsection* 2, *section* 1, *article* 12, *same chapter*, 1 *Revised Statutes*, 481, replevin and sale bonds are declared to have the "*force and effect of a judgment.*" By section 3, article 9, same chapter, it is enacted, that " an agreement to waive the right of replevy, *or any other legal agreement, in relation to any judgment or decree entered on the record among the orders of court, shall be specifically enforced.* In such cases, the proper indorsement shall be made on the execution by the clerk, judge, or justice."

By *section* 10, *chapter* 97, 2 *Stanton's Revised Statutes*, 399, it is enacted, that " a co-surety, co-obligor, or co-contractor, or one of several defendants to a judgment or decree, may, by notice in writing, served in person within the State on the creditor or plaintiff, or his attor-

ney, require him to sell or issue execution, &c.;" and by section 11, " if the plaintiff *in any bond,* having the force of a judgment, shall, at any time, for the space of a year, *while he is entitled to have execution,* fail to issue execution, and in good faith prosecute the collection thereof, the surety in such bond shall be released from all liability as such, and any execution thereafter issuing on the bond shall be so indorsed."

The recitals and covenants of this bond are " for money borrowed on the deposit above named for the benefit of such person or persons as the judge of the Hardin circuit court may adjudge it. This bond to have the force and effect of a replevin bond."

These covenants and recitals were unquestionably legal and enforceable under section 3, article 9, chapter 36, Revised Statutes, and upon which an execution could issue in Tabor's name, after the money was adjudged to him, December 27, 1866, according to section 1, article 5, chapter 36; consequently, he was bound to take out execution or move for a rule against the principal and security within the year, as provided in section 11, chapter 97, Revised Statutes; and having failed to do so, he is not to be permitted now to collect it from the security, and thus, by his own neglect and laches, throw upon him a burden, and perhaps a loss.

As by section 1, article 5, chapter 36, Revised Statutes, accumulative and effective remedies are given to the plaintiff in such cases, so by section 11, chapter 97, corresponding vigilance and activity is required of him as to securities.

In the case of *Barbee vs. Pitman* (3 *Bush,* 259), this court had not adjudged the money to any one when it ordered the funds collected more than a year after the bond was due. The officer loaning the funds or taking

the bond is not bound to take out execution, and perhaps should never do so without special authority from the court; because, so long as it remains loaned out, it produces interest, which it does not when in the officer's hands; therefore, the security could not complain in that case that the party to whom the money had been adjudged had, by his own neglect, imposed a burden on him.

So in *Rankin vs. White, &c.* (3 *Bush*, 545), where, before any order of distribution or direction as to whom the funds belonged, the court, by rule, proceeded to collect, and the security asked an exoneration, because the bond was to *operate as a replevin bond*, and no execution had issued thereon, though it had been due a year or more, but which this court held disallowable, because neither the letter nor spirit nor aim of section 11, chapter 97, Revised Statutes, applies to judicial bonds, the collection of which by execution, rule, or attachment, " *must be controlled by the court alone as to time and manner of enforcement.*"

In this case, the *court alone had not the control as to time and manner of enforcement;* but after the adjudication of the funds to Tabor, with an order that Helm should pay over to him, he had a strictly and perfectly legal right to proceed by execution in his own name on said bond for its collection, or he could have asked the court for a rule on both Helm and his security to bring the money into court; and not having done so, he, by his own delay, has released the security.

If this were not so, as by the act of January 26, 1866, Helm had a lien on these funds for an agreed fee, or if none was agreed, for a reasonable one, there should have been an inquiry on the offset as to what a reasonable fee would have been, and this should have been deducted

from the amount of the bond. As by the Code values are not to be taken for confessed, the amount was not essential to be averred, especially as the employment and rendering the service by Helm was averred; and the more so, in view of the infirmity of the rule itself.

This rule in Tabor's name was, however, highly appropriate; but it also evinces that an execution in his name would have been quite as much so, and also that any mutual claims between Helm and himself, especially such as were connected with the recovery of the funds, should be adjusted on proper presentation.

Wherefore, the judgment is reversed, with directions to dismiss the rule absolutely as against Wintersmith.